ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 23 2010

JAMES N. HATTEN, Clerk
By: Deputy Clerk

**CAPITAL ONE BANK USA .NA.,** )
**Plaintiff,** )
)
**v.** ) **Civil Action No-:**
)
**LUE A HODGE MAYFIELD,**

TWT

) 
**Defendant- Pro Se** ) **1:10-CV-2309**
)
)
)
)

## NOTICE OF REMOVAL

In accordance with 28 U.S.C §§ 1441 AND 1446, you are hereby notified that LUE A HODGE MAYFIELD is removing this civil action from the Magistrate Court of DeKalb County, State of Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division, and in support thereof show this Court the following:

1.

Plaintiff filed a Complaint against Defendant on June 21st ,2010 in the Magistrate Court of DeKalb County, State of Georgia, Civil Action File No. 10M 85899 and styled CAPITAL ONE BANK (USA) N.A. v. LUE A HODGE MAYFIELD. True and correct copies of all process, pleadings and orders served upon Defendant in said civil action are attached hereto as *Exhibit a.*

2.

Luc A Hodge Mayfield received a copy of this Complaint on or about June 25th, 2010. This Notice of Removal is filed within 30 days after receipt by this Defendant, through service or otherwise, of the Complaint setting forth the claim for relief upon which this action is based, and, therefore, it is timely within the provisions of 28 U.S.C. § 1446(b).

3.

Plaintiff's Complaint alleges that Defendant owes and alleged debt giving no factual bases for the claim Defendant is accused of. (Complaint, pp. 1.) Accordingly, this matter is removable pursuant to 28 U.S.C. § 1331, because the Plaintiff is a National Association govern by federal law.

4.

Defendant removes this matter pursuant to 28 U.S.C. § 1331 on the grounds that Defendant has a 7TH Amendment right to a Trial by Jury that is barred in Magistrate Court pursuant to O.C.G.A. § 15-10-41. No jury trials.

5.

Defendant removes this matter pursuant to 28 U.S.C. § 1331 on the grounds that Defendant has a 14TH Amendment right to Due Process of Law in which Defendant is barred from requesting Discovery of her accuser to verify any and all alleged complaints in order to properly prepared a legal defense in which Magistrate Court bars this right pursuant to O.C.G.A. § 15-10-42. Civil Practice Act inapplicable to magistrate courts.

6.

Defendant removes this matter pursuant to 28 U.S.C. § 1331 on the grounds that Defendant has filed a counterclaim accusing Plaintiff has violated Public Law 38 Stat 99-118 [National Banking Act] in which Plaintiff Directors has an oath filed with the Comptroller of the Currency to uphold.

7.

Defendant removes this matter pursuant to 28 U.S.C. § 1331 on the grounds that Defendant has filed a counterclaim accusing Plaintiff has violated 15 U.S.C. 1692g Fair Debt Collections Practice Act.

8.

Defendant removes this matter on the grounds that Defendant has filed a counterclaim requesting damages from Plaintiff actions over $15,000.00 which is out of the Jurisdiction of the Magistrate court to adjudicate pursuant O.C.G.A § 15-10-2. Jurisdiction

"(5) The trial of civil claims including garnishment and attachment in which exclusive jurisdiction is not vested in the superior court and the amount demanded or the value of the property claimed does not exceed $15,000.00, provided that no prejudgment attachment may be granted;"

9.

This civil action is one over which this most Honorable Court has original jurisdiction under the provisions of 28 U.S.C. § 1446, et seq., and one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441 AND 1446.

Wherefore, Luc A Hodge Mayfield respectfully requests that the entire action referred to hereinabove proceed in the United States District Court for the Northern District of Georgia, Atlanta Division, and that no further proceeding be held in said case in the Magistrate Court of DeKalb County, Georgia.

## Affidavit and Verification

I, Lue Ann Hodge Mayfield, am older than 18 years of age, of sound mind, and I depose that all statements, allegations and facts are true and correct to the best of my knowledge and beliefs pursuant to OCGA 9-10-111, OCGA 9-10-112, Federal Civil Rule 11(b) and Title 28 USCA Section 1746.

Signed and submitted on this day 23RD , JULY, 2010

X

Luc A Hodge Mayfield
Pro se

7369 Asbury Dr, Lithonia, GA, 30058
770-484-7190

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **CAPITAL ONE BANK USA .NA.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No-:** |
| | ) | |
| **LUE A HODGE MAYFIELD,** | | |
| | ) | |
| **Defendant- Pro Se** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing *NOTICE OF REMOVAL* by depositing a copy of same by certified per-paid United States Mail in a properly addressed envelope to Plaintiff Counsel;

Attorneys at Law
Frederick J. Hanna & Associates, P.C.
1427 Roswell Road
Marietta, GA, 30062

Certified mail# 7010 0780 0001 6100 7899

This 23rd day of July, 2010.

X [signature]
Lue A Hodge Mayfield
Pro se

7369 Asbury Dr, Lithonia, GA, 30058
770-484-7190

Exhibit a

Cost 51.50 Service Fee ∅

Case No. 10A35899 Date Filed 6-21-10

# MAGISTRATE COURT OF DEKALB COUNTY
DEKALB COUNTY COURTHOUSE

PLAINTIFF: CAPITAL ONE BANK (USA), N.A.
(Name and Address)

DEFENDANT: LUE A HODGE MAYFIELD
7369 ASBURY DR
LITHONIA GA 30058-5902
(Name and Address)

## STATEMENT OF CLAIM

☐ Suit on a Note ☒ Suit on Account ☐ Other (Explain) ______

1. The Court has jurisdiction over the Defendant.

2. Plaintiff says the defendant is indebted to the plaintiff as follows: $8,411.68 principal, $299.45 interest, $896.11 attorneys fees & $76.50 court costs.

Plaintiff, by this Complaint, gives the Defendant written notice in accordance with the requirements of 13-1-11 of the O.C.G.A. that Plaintiff intends to enforce the provisions of the agreement relative to payment of all costs of enforcement, including attorney's fees, in addition to principal and interest unless the principal, interest, and court costs herein demanded are received within ten (10) days from the receipt of this Complaint by Defendant. If payment of the principal, interest, and court costs herein demanded are not received within ten (10) days from the receipt of this Complaint by Defendant, Defendant will be liable for attorney's fees set out for in 13-1-11 of the O.C.G.A. in addition to the principal, interest, and court costs.

**State of Georgia, DeKalb County:**

Dennis E. Henry being duly sworn on oath says the foregoing is a just and true statement of the plaintiff and claim made by plaintiff against defendant, exclusive of all set-offs and just grounds of defense.

Sworn and subscribed before me
this 15th day of ______

DIANE T. HENDRICKS NOTARY PUBLIC EXPIRES GEORGIA AUG 18, 2013 COBB COUNTY

Notary Public or Attesting Official

CK#11'MUS

**Frederick J. Hanna & Associates, P.C.**

**By:** [signature]

**Attorney for Plaintiff** **GA Bar #347675**
**(770) 988-9055**
Phone Number
☐ Afternoon Trial ☐ Evening Trial

## NOTICE AND SUMMONS

TO LUE A HODGE MAYFIELD
7369 ASBURY DR, LITHONIA GA 30058-5902

You are hereby notified that CAPITAL ONE BANK (USA), N.A. has made and filed a claim and is asking for judgment against you in the sum of $9,607.24 dollars ($9,607.24), as shown by the foregoing statement. YOU ARE REQUIRED TO FILE OR PRESENT AN ANSWER TO THIS CLAIM WITHIN 30 DAYS AFTER SERVICE OF THIS CLAIM UPON YOU. IF YOU DO NOT ANSWER, JUDGMENT BY DEFAULT WILL BE ENTERED AGAINST YOU. YOUR ANSWER MAY BE FILED IN WRITING OR MAY BE GIVEN ORALLY TO THE CHIEF OR PRESIDING MAGISTRATE DURING REGULAR COURT HOURS. FILE OUR ANSWER, 1ST FLOOR, DEKALB COUNTY COURTHOUSE, ROOM 103, 556 N. McDONOUGH STREET, DECATUR, GEORGIA 30030.

**The court will hold a hearing upon this claim at a time to be set after your answer is filed. If you have witnesses, book receipts, or other writings bearing on this claim, you should bring them with you at the time of the hearing. If you wish to have witnesses summoned, see the court at once for assistance.**

**If you have any claim against the plaintiff, you should notify the court at once. If you admit the claim, but desire additional time to pay, you must come to the hearing in person and state the circumstances to the court.**
**You may come with or without an attorney.**

Statementofclaim8/2005

Clerk, Magistrate Court, DeKalb County
[signature]

74965

AFTER 3/05

CAP 1
4-1-05
to
6-30-08

# CUSTOMER AGREEMENT

005/13

...come to Capital One.® We are pleased to have your credit card account. This Customer Agreement contains information about your account. Please read it and keep it for your records. Your contract with us for the card and account ("the Agreement") consists of this Customer Agreement, together with any changes to this Customer Agreement that we make as provided below, the Security Account (if applicable), the Security Account Assignment Agreement (if applicable), Capital One Privacy Notice, any account disclosures provided and delivered to you prior to or at the time your account opened, including disclosures pursuant to requirements of Truth in Lending Act (hereinafter "TILA Account Disclosures"), as well as any subsequent notices of changes to these documents, and any and all documents that include your signature (including any electronic or digital signature) on any application, sales slip or other evidence of indebtedness on your account. In this Agreement the words "you," "your" and "yours" refer to each person who signed the application for the account (each, a "joint accountholder") and to anyone else who is authorized to use the account in any way (each, an "Authorized User"). Except as specifically stated herein, each of you is individually and jointly obligated under this Agreement. The words "we," "us" and "our" mean Capital One Bank and its successors, assigns, agents and/or authorized representatives. If the application for the account stated that the account will be a "Security Account," this means the funds you have pledged to us to secure your account. This Agreement and the Security Account Assignment Agreement (if applicable) do not apply to any other Capital One Bank account that you may have, either now or in the future, except as provided in the Arbitration Provision below. Unless you have entered into a Security Account Assignment Agreement with us, the account is unsecured. Except as provided in the Security Account Assignment Agreement (if applicable), the account is not secured by any other property, regardless of the terms of any other contract to which you and we are subject. We can delay enforcing any of our rights under this Agreement without losing them. The card is and remains our property, and you will surrender it to us at any time upon request.

**Assignment.** We may transfer your account, the Security Account (if applicable), the Security Account Assignment Agreement (if applicable) and/or our rights under this Agreement to an assignee. The assignee will take our place under this Agreement, the Security Account (if applicable) and the Security Account Assignment Agreement (if applicable) with respect to the agreements and interests transferred. The assignee may or may not be an affiliate of Capital One Bank. You must pay the assignee and otherwise perform all of your obligations under those agreements. You may not transfer your account or your rights under this Agreement, the Security Account (if applicable) or the Security Account Assignment Agreement (if applicable) to any person or entity without our express prior written consent. Subject to the preceding sentence, this Agreement will be binding and inure to the benefit of your and our respective successors, assigns and representatives.

**Using Your Account.** You can make purchases and obtain cash advances (if cash advances are an option for your account) by using your card, account number and any account access checks (including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar checks) that we may send to you. Additionally, you may request a stop payment on account access checks, but we reserve the right to charge you a fee for such services. When we provide you with account access checks, we will tell you whether they will be treated as purchases, cash advances or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances. We may establish different segments for your account, such as a purchase segment, a cash advance segment and a special transfers segment. Each segment may be subject to terms and conditions that are different than those that are applicable to other segments.

Our liability, if any, for any wrongful dishonor of an account access check is limited to your actual damages and shall not include any consequential damages, and in no event will it exceed the amount of the check.

You agree not to use the card or account in connection with any Internet or illegal gambling transactions, but any Internet or illegal gambling transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable).

Your card and account may only be used for valid and lawful purposes. If you use, or authorize someone else to use, the card or account for any unlawful or impermissible purpose, you will be responsible for such use and may be required to reimburse us and MasterCard International Incorporated "MasterCard" or Visa USA, Inc. "Visa," as applicable, or their successors for all amounts or expenses that we or they pay as a result of such unlawful or impermissible use. In any event, any unlawful or impermissible transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable). You agree that we are not responsible if anyone refuses to honor your card or account.

If you had a prior credit card or other account with us, or such an account or balance of such an account was transferred to us or one of our affiliates, and you agreed to reinstate the balance of the prior account in the form of your new account, the new account will accrue finance charges from the date that the new account is opened.

Authorized users are not financially responsible for the account. An authorized user may use a credit card, can request certain account information and can request to be removed from the account. Subject to our discretion, an authorized user may not be able to initiate certain actions on the account. You agree to provide us with information identifying any persons you authorize to use your account, including their name, address, date of birth and other identifying information we may request.

**Exchange Rate.** If you make a transaction in currency other than U.S. dollars, VISA International or MasterCard International will convert the charge or credit into a U.S. dollar amount in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. VISA International's regulations and procedures provide that effective April 2, 2005, the exchange rate between the transaction currency and the billing currency used for processing International transactions is either (1) a rate selected by VISA from the range of acceptable rates in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives or (2) the government mandated rate in effect for the applicable central processing date. MasterCard International's regulations and procedures provide the currency conversion rate it uses is either (1) a wholesale market rate or (2) a government mandated rate in effect on the day of the central processing date.

**Cash Equivalent Transactions.** If cash advances are an option for your account, you can use your account to purchase certain items that we regard as "cash equivalent transactions." All cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include, without limitation, the purchase of wire transfer money orders, bets, lottery tickets, casino gaming chips and other similar products or services. Nothing in this paragraph will be interpreted to validate any transaction that is unlawful or impermissible.

**Your Credit Limit.** Your initial credit limit will be disclosed when your account is opened (or activated). Either initially, or at any later time, we may establish different credit limits that apply to different segments of your account (such as purchases, cash advances and special transfers). Your current credit limits will be identified in your periodic statements. You agree not to allow the balance of your account (including all transactions, finance charges and other fees or charges), or the balance of the applicable segments of your account, to exceed the applicable credit limits. If you have been given the option to increase your credit limit by adding funds to your Security Account (if applicable), we reserve the right not to increase your credit limit if the additional funds are provided while your account is in default. We may increase or decrease your credit limits at any time without prior notice to you, may temporarily increase or decrease your credit limits at any time without prior notice to you, may limit the credit limit for cash advances or may take away your ability to obtain cash advances. We may honor transactions in excess of your credit limit, even if those transactions result in an over limit fee, and those transactions and fees will be subject to this Agreement and the Security Account Assignment Agreement (if applicable). Any transactions honored in excess of your credit limit will not result in an increase of your credit limit unless we expressly notify you otherwise.

**Additional Benefits and Services.** From time to time, we may offer you benefits and services with your account. These benefits and services may be provided by us or third parties. Unless expressly made a part of this Agreement, and except as provided in the Arbitration Provision below, any such benefits and services are not a part of this Agreement, and are subject only to the terms and conditions outlined in the benefits or services brochure and other official documents provided to you with respect to the benefits and services. We may adjust, add, or delete benefits or services at any time in accordance with the brochures or documents you receive. In addition, any such benefits or services offered to you in the most current version of the "Guide to Benefits" shall replace and supersede the benefits and services that had been offered to you in all previous versions of the "Guide to Benefits," without further notice. Except as provided by applicable law, we are not liable for benefits or services provided by third parties or the actions or omissions of those third parties.

**Making Payments.** You promise to pay us and are liable for all amounts due resulting from the authorized use of your card or account, including any finance charges and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a check, money order or other negotiable instrument (an "item") must be in a form acceptable to us and be drawn on a U.S. financial institution. We may allocate payments and other credits and proceeds among the various segments of your account, and to charges and principal due within each segment, in any way we determine, including balances (including new transactions) with lower annual percentage rates (APRs) before balances with higher APRs.

Payments you mail to us at the address for payment stated on your periodic statement will be credited to your account as of the business day we receive it, provided (1) you send the remittance coupon portion of your periodic statement and your check in the remittance envelope provided and (2) your payment is received in our processing center by the time indicated on your periodic statement. Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in any other form may not be credited as of the day we receive them. Our business days are Monday – Saturday, excluding holidays. Credit availability may be delayed in our sole discretion to ensure payment in good funds. If we accept a payment at some other place, we may delay the crediting of the payment for up to five (5) days. This may cause you to incur late payment fees and additional finance charges, and may result in your account being declared to be in default.

Any minimum payment that is due will be stated in your periodic statement. You must pay at least the minimum payment due by the date stated in your periodic statement to avoid a late payment fee. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We can accept late payments or partial payments, or items marked "payment in full" or other similar language, or payments with a request to apply the payment in a particular manner, without losing any of our rights under this Agreement, including our right to receive payment in full. No payment shall operate as an accord and satisfaction without our prior written approval. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Capital One, P.O. Box 85010, Richmond, VA 23285-5010. You will not make payments from funds obtained from the account or any other credit account with us. If your payment is made to any other address, we may accept the payment without losing any of our rights.

When you send us check(s) to make payment on your account, you authorize us to make a one-time electronic transfer from your bank account for the amount of the check as indicated by numerical digits. This authorization applies to all check(s) received by us during the billing period even if sent by someone else, who you agree is your agent and was provided with these disclosures in advance. This authorization is not restricted by the date on the check and includes resubmissions. We will not be bound by any restrictive legend or condition appearing on the face or reverse side of the check. If we cannot process the electronic transfer, you authorize us to make a charge against your bank account by processing the check, substitute check, draft or similar instrument.

We may adjust your account as appropriate to correct errors, returned items, rejected debits and similar matters.

We may, in our sole discretion, offer an expedited payment service. You are not required to use this service. When you authorize us to process a demand draft, electronic ACH debit or other expedited payment method for your account, we may charge you an expedited payment fee in an amount disclosed to you at the time of the service. We are not responsible for any dishonor of the payment by your depository institution and may retain the fee in the event of such dishonor.

If you give your account number or other account information to another person to make a payment for you or to act on your behalf, you agree that we may discuss your account with that person and process the payment as if it were made by you. You further agree that you will be responsible for all consequences of payment or non-payment by such party, including expedited payment, return payment, late payment and over limit fees. We reserve the right to refuse to accept payment on your behalf or to permit another person to act on your behalf.

**Periodic Statement.** Each month that you have a credit or debit balance of more than $1 in your account, we will send you a periodic statement as and when required by applicable law. The periodic statement will show all transactions billed to your account during the billing period. The billing period is the time from one statement closing date through and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, your January billing period is the billing period with the statement closing date in January.

**Finance Charge.** You will be assessed finance charges as previously disclosed to you as part of the TILA Account Disclosures or as we will disclose to you if required by applicable law.

**Temporary Reduction in Finance Charge.** We reserve the right to not assess any or all finance charges for any given billing period without waiving the right to assess such finance charges in a future billing period.

**Other Fees and Charges.** The following fees will be billed to the purchase segment of your account and will be treated as a purchase and invoked against your available credit limit, unless otherwise specified, in every billing period in which they apply: (i) A late payment fee will be assessed if we do not receive your payment in time for it to be credited, as provided in this Agreement, by the date stated in your periodic statement. (ii) An over limit fee will be assessed if the balance of your account (or any segment of

account) at any time during the billing cycle, for any reason, is greater than the applicable temporary or permanent credit limit (regardless of whether you went over limit as a result of a transaction, finance charge or any other fee or charge, even if approved by us); (iii) a returned check fee will be assessed if we do not honor any account access check for any reason; (iv) copying charges for duplicate copies of documentation or periodic statements will be assessed on a per page basis, unless required for billing dispute resolution; (v) a returned payment fee will be assessed if, for any reason, (a) a check, draft or similar instrument is not honored or cannot be processed, or (b) an electronic debit is returned unpaid or cannot be processed. You authorize us to resubmit returned payments in our discretion. At our option, we may assess this fee each time your payment is not honored or paid, even if it is later honored or paid following resubmission. Any check, draft or similar instrument may be collected electronically if returned for insufficient or uncollected funds. We may change any of these fees or charges, or add additional fees and charges, as provided below. We reserve the right to waive any of these fees without prior notification to you while maintaining our right to assess these fees going forward.

Cash Advance Fee. If cash advances are permitted for your account, a cash advance fee finance charge will be (i) assessed each time you obtain a cash advance or cash equivalent transaction, (ii) added to the cash advance segment of your account and (iii) applied against your available credit limit. The amount of the cash advance fee finance charge will be added to other finance charges shown on your periodic statement for the purpose of calculating the annual percentage rate for that billing period. This may cause the annual percentage rate disclosed for that billing period to be greater than the annual percentage rate disclosed to you.

Membership Fee. If applicable, a membership fee will be imposed in your first billing period, unless specifically stated otherwise. If the membership fee is assessed annually, it will be assessed in the billing period in which each anniversary of the opening of your account occurs. If the membership fee is assessed monthly, it will be assessed in each billing period. The fee will be billed to the purchase segment of your account and will be treated as a purchase and applied against your available credit limit. The membership fee will not be refunded, in whole or in part, even if you or we cancel the account.

Transfer Fee. A fee will be assessed for each transfer of funds from your account to your Security Account that you request. The fee will be billed to the cash advance segment of your account and will be treated as a cash advance and applied against your available credit limit.

Foreign Transaction Charge. For each transaction made in a country other than the U.S., or U.S. Territories, we will assess you a finance charge as previously disclosed to you as part of the TILA Account Disclosures or as we will disclose to you if required by applicable law. The fee will be based on the U.S. dollar amount of the transaction.

Credit Bureau Information. You agree that we may obtain information about you from credit reporting agencies or others at any time and use it for the purposes of monitoring your credit performance, managing your account and considering you for new offers and programs.

Security Interest. The terms and conditions contained within this paragraph apply only if the application for the account stated that the account will be a secured account. You provided us with certain funds, which have been deposited in the Security Account. To secure payment of the balance of the account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement, you have transferred, assigned, pledged and granted to us a security interest in the Security Account, all funds contained in the Security Account, all proceeds of the foregoing and all proceeds of proceeds. This security interest includes, without limitation, the initial funds that were placed into the Security Account, any additional funds added to the Security Account by any person and any interest earned to or accrued on the Security Account. The terms of the security interest are set forth in the Security Account Assignment Agreement you executed. If (i) you default or fail to abide by any of the terms of this Agreement or the Security Account Assignment Agreement, (ii) you close your account or (iii) we cancel your account for any reason, we may then or thereafter, and without prior notice to you, exercise our security interest by deducting from your Security Account the balance due on your account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement. We may exercise the right to make such deductions from your Security Account periodically as we determine to be appropriate. Within sixty days after the date your account is closed, we will send all remaining funds in the Security Account to the person legally entitled to receive them.

Future Offers. The terms of any future offer relating to the account will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

Default. We may, in our sole discretion, declare a default under this Agreement if: (a) we do not receive the full amount of any minimum payment on or before the date it is due, (b) you exceed any credit limit or (c) an item used to make payment on your account is not honored or cannot be processed, or an electronic debit to make payment on your account is returned unpaid or cannot be processed. To the extent permitted by applicable law, we may also, in our sole discretion, declare a default under this Agreement if: (1) you violate any of the other terms of this Agreement or Security Account Assignment Agreement (if applicable), (2) we have declared you to be in default under the terms of any other agreement with us or any of our affiliates, or (3) we determine that you made any false or misleading statements on your application for, or regarding the use of, the account, or otherwise attempted to defraud us, (4) bankruptcy or other insolvency proceedings are instituted by you or against you or (5) you die or are declared legally incompetent or incapacitated. At any time following any default under this Agreement (or after we give you any notice or right to cure the default, if required by applicable law), you will be subject to paying interest, finance charges and other fees pursuant to the terms of this Agreement, including any applicable default rate, even after any judgment is obtained. Additionally, we may, at our sole option, (x) limit or not allow you to make any new purchases or cash transactions on your account(s), (y) increase your minimum payment with such notice as may be required by applicable law or (z) subject to the limitations of applicable law, close your account(s) and demand immediate payment of the entire outstanding balance plus all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement.

To the extent permitted by applicable law, you agree to pay us all of our actual court costs, collection expenses and attorney's fees (whether paid to an attorney who is one of our employees or an attorney who is not one of our employees) incurred by us in the collection of any amount you owe us under this Agreement. You also agree to pay us all of our actual costs that we incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list. Nothing in this paragraph shall be construed to waive or impede our right to require arbitration in accordance with the Arbitration Provision below.

Account Closure and Suspension of Credit Privileges. (1) We may, at any time, with or without cause, with or without advance notice, and regardless of the existence or non-existence of a default under this Agreement, cancel the account and/or temporarily or permanently suspend your credit privileges under this Agreement. If we cancel the account, you agree to immediately destroy all cards and unused account access checks. (2) Your obligation to make payments and your other obligations under this Agreement will continue in full force and effect after the account is cancelled or your credit privileges are temporarily or permanently suspended. Cancellation of the account and/or temporary or permanent suspension of your credit privileges will not affect our security interest in your Security Account (if applicable) or our rights under the Security Account Assignment Agreement (if applicable). You can close your account by calling our Customer Relations department with the number found on the back of your credit card or, if different, the number stated in your periodic statement and requesting an account closure. You agree to destroy all cards and unused account access checks, cancel all preauthorized billing arrangements and cease using your card and account. If you do not cancel all preauthorized billing arrangements, you and we will consider our receipt of a preauthorized debit to your account to constitute your authorization to reopen the account on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). Your account will not be closed until you pay all amounts you owe us under this Agreement and the Security Account Assignment Agreement (if applicable) including, without limitation, any purchase and cash advance transactions you have authorized, finance charges, late payment fees, over limit fees, returned check fees, returned payment fees, membership fees, cash advance fees, transfer fees, copying charges and any other fees charged to your account. You are responsible for these amounts whether they have been incurred at the time you request a closure of the account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed and, if the account has already been closed, the account will be reopened on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). For example, if you authorize a purchase from a merchant and we receive the charge from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account and you will be responsible for payment under the terms of this Agreement and the Security Account Assignment Agreement (if applicable). The membership fee for your account will continue to be charged, to the extent permitted by applicable law, until the entire account balance has been paid in full, as described above. If the account is reopened, a new membership fee will be charged to the account as stated above.

If you, acting as the primary cardholder, want to terminate a joint accountholder's or an authorized user's access to the account, you must call our Customer Relations department and request that termination. Immediately thereafter, you agree to destroy that person's card(s) and destroy any unused account access checks in that person's possession. There may be a delay in the effective date of the termination of that person's access to the account. The account will be charged, and you and any joint accountholders will be responsible, for any charges through the use of the card or the account by the joint accountholder or authorized user that occur prior to the effective date of the termination even if the charges do not appear on the account until a later time. If you are unable to destroy the joint accountholder's or authorized user's card(s) or to destroy the unused account access checks in that person's possession, and you call our Customer Relations department to close your account, your account will be closed in accordance with the preceding paragraph. Either you and/or the joint cardholder, if any, may apply for a new account.

Changes in Terms. We may add to, remove, amend or change any part or provision of this Agreement, including the annual percentage rate(s) and any charges, (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time. If we do so, we will give you notice of such amendment or change if required by Federal law or Virginia law (to the extent not preempted by Federal law) unless we had previously notified the customer that the account would be subject to such amendment or change without notice. Notice will be mailed to the last billing address indicated in our records for the account. However, no notice will be mailed if we previously had notified you that your account would be subject to such amendment or change without notice. Changes to the annual percentage rate(s) will apply to your existing account balance from the effective date of the change, whether or not the account balance includes transactions billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

Governing Law. WE MAKE THE DECISION TO GRANT CREDIT, OPEN AN ACCOUNT AND ISSUE YOU A CREDIT CARD FROM OUR OFFICES IN VIRGINIA. This Agreement is to be construed in accordance with and governed by the laws of the United States of America and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties. This Agreement is made in Virginia. It will be governed only by Federal law and Virginia law (to the extent not preempted by Federal law). If a court decides not to enforce a part of this Agreement, this Agreement will then read as if the unenforceable or invalid part were not there, but the remaining parts will remain in effect.

Waivers. You waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor and any right you may have to require us to proceed against another party before proceeding against you. You also waive, to the extent permitted by applicable law, any statute of limitations defense for an additional period of time equal to the applicable limitations period.

Lost or Stolen Cards or Account Access Checks. If your card(s) or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number on the back of your credit card or, if different, the telephone number shown on the front of your periodic statements, or by writing us at Capital One, P.O. Box 85015, Richmond, VA 23285-5015. You will not be liable in any amount for unauthorized use of your cards or account access checks.

You agree to let us at once if you change your name, address, telephone number or employment. You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

Communications. We may release information to others regarding the status or history of your account as set forth in the Capital One Privacy Notice, a copy of which has been provided to you. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us. We or our representatives may contact you from time to time regarding the account, or to ask for additional information about you or your experience with Capital One. You agree that such contacts are not unsolicited, are not limited except as expressly required by applicable law and may result from contact information you have provided or that is obtained from other sources. For example, we may contact you at your home or place of employment, during weekends or holidays, on your mobile telephone, voicemail or answering machine, and by email, fax, recorded message, text message or personal visit. Except as restricted by applicable law, we may monitor or record any calls we make or receive, suppress caller identification services and use an automated dialing and announcing device.

ARBITRATION. PLEASE SEE ENCLOSED "ARBITRATION PROVISION." PLEASE NOTE THAT THE TERMS INCLUDED IN THE ARBITRATION PROVISION ARE PART OF YOUR CUSTOMER AGREEMENT.

© 2005 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

0318-17-0305
M-73733

# ARBITRATION AGREEMENT

IMPORTANT: THIS ARBITRATION PROVISION IS A PART OF YOUR CUSTOMER AGREEMENT

You and we agree that either you or we may, at either party's sole election, require that any Claim [illegible] be resolved by binding arbitration.

IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION. THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.

**Special Definitions for this Arbitration Provision.** For the purposes of this arbitration provision ("Arbitration Provision"), the following definition shall apply in addition to the definitions set forth in your Customer Agreement ("Agreement"):

"Claim" means any claim, controversy or dispute of any kind or nature between you and us.

A. This definition includes, without limitation, any Claim that in any way arises from or relates to:

- the Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account);
- this Arbitration Provision (including whether any Claim is subject to arbitration);
- the establishment, operation or termination of your account;
- any disclosures, advertisements, promotions or other communications relating to your account, whether they occurred before or after your account was opened;
- any transactions or attempted transactions involving your account;
- any billing or collections matters relating to your account;
- any posting of transactions (including payments or credits) to your account;
- any goods or services charged to your account;
- any fees, interest or other charges assessed to your account, or their calculation;
- any products, services or benefits programs related to or offered in connection with your account (including any insurance, [illegible] or extended service contracts and any programs, rebates, rewards, sweepstakes, memberships, discounts or [illegible]) whether or not we offered, produced, sold or provided them;
- our receipt, use or disclosure of any information about you or your account;
- any other matters relating to your account or your relationship with us.

B. This definition also includes, without limitation, any Claim:

- regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading or third party claim);
- based on any theory of legal or equitable [illegible] (including any [illegible] damages, [illegible] or [illegible] relief);
- based on any theory of law or equity (including contract, tort, fraud, [illegible], statute, regulation, ordinance or [illegible] acts or omissions of any type, whether negligent, reckless or intentional);
- made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs or a trustee in bankruptcy);
- for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made);
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued;
- made as part of a class action, private attorney general action or other representative or collective action, which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

**Arbitration Administrators.** One of the following arbitration administrators ("Administrator" or collectively, "Administrators") will administer the arbitration:

JAMS
1920 Main St., Ste. 300
Irvine, CA 92614
www.jamsadr.com

American Arbitration Ass'n
335 Madison Ave., Floor 10
New York, NY 10017-4605
www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
www.arbitration-forum.com

You may contact any of the Administrators to obtain information about arbitration, arbitration rules and procedures, fee schedules and claim forms.

**Election and Initiation of Arbitration.** You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court. You or we may make a motion or request in court to compel arbitration of any Claim brought as part of any lawsuit. We will not elect or initiate arbitration of any Claim brought in a small claims court (or the equivalent) so long as the Claim remains in that court, is made solely on behalf of an individual or joint account holder and is not made as part of a class action, private attorney general action or other representative or collective action. You and we must follow the rules of the Administrators to initiate arbitration. [illegible]

**Procedures and Law Applicable in Arbitration.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act ("FAA"). Questions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced consistent with the FAA and the terms of this Arbitration Provision. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations, but the validity and enforcement of any class action waiver is a question for a court of competent jurisdiction, not an arbitrator, to decide. [illegible]

**Costs.** The party initiating arbitration will pay the initial filing fee. You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, "Administrator's Fees") under any applicable rules of the Administrator. [illegible]

**No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action. [illegible]

**Judgment, Enforcement, Finality and Appeal.** The arbitrator's decision will be final and binding after fifteen days unless you or we seek an appeal of the award by making a written request to the Administrator. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as set forth under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

**Miscellaneous, Waiver, Severability, Survival.** If you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim. This Arbitration Provision shall survive: (i) suspension, termination, revocation, closure or changes of this Agreement, your account and your relationship with us; (ii) the bankruptcy or insolvency of any party; and (iii) any transfer of your account, or any amounts owed on your account, to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern. A photocopy or other image of this Agreement and related documents may be used in place of the originals for all purposes including litigation.

© 2005 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

**MAGISTRATE COURT**
**OF**
**DEKALB COUNTY**

| | | |
|---|---|---|
| **CAPITAL ONE BANK USA .NA.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No-:10M 85899** |
| | ) | |
| **LUE A HODGE MAYFIELD,** | | |
| | ) | |
| **Defendant- Pro Se** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DIMISS**

Now comes, Lue Ann Hodge Mayfield Defendant, moves this most Honorable Court to dismiss Plaintiff complaint Pursuant to O.C.G.A. § 9-11-12 (b6) for Failure to state a claim upon which relief can be granted;

1.

Plaintiff filed a complaint with this most Honorable Court on June 21st 2010 alleging that Defendant owes Plaintiff $8,411.68 principal, $299.45 interest, $896.11 attorneys fees & $76.50 court cost total sum being $9,607.24 without any evidence or proof of any sort to sustain such a complaint.

2.

Plaintiff's allegations are so vague and incomplete as to make wholly unclear as to how Defendant could be liable to such a claim.

3.

Defendant is unable to file an answer to a complaint that states no claims that would show that the Defendant is liable for Plaintiff alleged lost.

4.

Plaintiff filing a complaint with only a copy of a CUSTOMER AGREEMENT with no signature of Defendant, contract of any sort binding Defendant to any liability appears to have no force of claim that this most Honorable Court could rule on. Such allegations cannot state a claim, even under permissive pleading standards. *See Bell Alantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Twombly* and *Iqbal*, Plaintiff is required to plead facts to support a reasonable inference that there has been a violation. *Iqbal*, 129 S. Ct. 1937; *Twombly*, 550 U.S. at 570. Simply concluding that Defendant harmed Plaintiff completely fails to meet minimum pleading standards. See Igbal, 129 S. Ct. at 1949.

5.

Further, although this most Honor Court may accept the truth of the facts alleged in the complaint when considering a motion to dismiss, see Linder v. Portocarrero, 963 F. 2d 332, 334 (11th Cir. 1992), the Court does not accord such deference to allegations of opinion and legal conclusions. *See South Fla. Water Mgmt. Dist v. Montalvo*, 84 F. 3d 402, 408 n.10 (11th Cir. 1996). To properly state a claim, Plaintiff must allege a factual basis for each element of each claim he asserts, setting forth " *enough factual matter (taken as true) to suggest [each] required element.*" *See Watts v. Fla. Intern. Univ.*, 495 F. 3d 1289, 1295 (11th Cir 2007). *To state a claim*

"*requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.*", and if this most Honorable Court would take note that Plaintiff does not even state an effective cause of action.

Twombly, supra.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on it face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard.... Asks for more than a sheer possibility that the defendant has acted unlawfully. *Iqbal, supra, at 1949*

6.

Applying the above principles, this most Honorable Court should dismiss this Complaint because Plaintiff has not alleged any facts to "nudge their claims across the line from conceivable to plausible." Id. At 1951. Plaintiff fails to allege sufficient facts to support any actions of this most Honorable Court to rule on. Thus this claim should be dismissed outright for failure to state a claim upon which relief can be granted in violation of OCGA § 9-11-10(b). [Form of pleadings]

## CONCLUSION

a) Plaintiff Complaint has no factual bases to hold Defendant liable for wrong doing.

b) Plaintiff has violated OCGA § 9-11-10(b). [Form of pleadings] where plaintiff is obligated to clearly state all factual claims in a manner that this most Honorable Court could discern the truth of their allegation.

c) Thus no genuine controversy of facts has been argued or evidence presented for Plaintiff to stop this most Honorable Court from dismissing their claim.

d) Defendant respectfully asks this most Honorable Court to dismiss this claim for failure to state a claim upon which relief can be granted.

## Affidavit and Verification

I, Lue Ann Hodge Mayfield, am older than 18 years of age, of sound mind, and I depose that all statements, allegations and facts are true and correct to the best of my knowledge and beliefs pursuant to OCGA 9-10-111, OCGA 9-10-112, Federal Civil Rule 11(b) and Title 28 USCA Section 1746.

Signed and submitted on this day 19th , JULY, 2010

Lue Ann Hodge Mayfield, Affiant A.R.R.

...URT OF

2010 ... 19 AM 11: 09

... BY:

**MAGISTRATE COURT**

**OF**

**DEKALB COUNTY**

| | | |
|---|---|---|
| **CAPITAL ONE BANK N.A.** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No-:10M 85899** |
| | ) | |
| **LueAnn Hodge Mayfield,** | | |
| | ) | |
| **Defendant, Pro se** | ) | |
| | ) | |
| | ) | |

---

## Certificate of Service

**I, LueAnn Hodge Mayfield, certified that I have delivered pre-paid by U.S. certified mail**

**Defendants Counsel,**

**DEFENDANT'S MOTION TO DIMISS**

**on July 19th, 2010 to the following:**

Law Offices:

**Frederick J. Hanna & Associates, P.C.**

**1427 Roswell Rd, Marietta, GA, 30062**

Certified Mail #7010 0780 0001 6100 7905

X [signature]